[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13293
Non-Argument Calendar
_____

D.C. Docket No. 5:06-cr-00092-MTT-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE EVANS, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 28, 2016)

Before WILSON, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Willie Evans appeals the district court's revocation of his supervised release. On appeal, he argues that the district court abused its discretion and violated his constitutional rights by admitting laboratory reports without the testimony of the chemists who prepared them. After careful review, we affirm.

## I.  BACKGROUND

In 2007, Defendant was sentenced to 188 months' imprisonment followed by four years of supervised release after pleading guilty to two counts of possession with intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii). After several sentence reductions, Defendant's sentence was ultimately reduced to 81 months' imprisonment.

Defendant began his term of supervised release in November 2012, and before the term expired, the probation officer filed a petition seeking revocation of Defendant's supervised release. According to the petition, Defendant had violated mandatory conditions of his supervised release by: (1) violating the law by committing the offenses of possession of cocaine, possession of marijuana, possession of MDMA, and possession of methamphetamine; and (2) possessing or using a controlled substance, namely testing positive for marijuana use following a urinalysis test.

At the revocation hearing, Defendant admitted the second violation, but contested the first violation.  As a result, the Government called Monroe County Sheriff's Office Sergeant Michael Hull, who testified that he was on patrol on April 17, 2015, when he noticed a large number of vehicles and people gathered in a gas station parking lot.  After running the license plate numbers of the vehicles in the lot, one of the vehicles came back registered to an individual who had a suspended driver's license and an active warrant for her arrest.  Sergeant Hull approached that vehicle and arrested the driver.  Because another officer detected the smell of marijuana emanating from the car, Sergeant Hull asked the passenger in the back seat of the car, later identified as Defendant, to exit the vehicle.  Sergeant Hull observed that Defendant's eyes were blood shot, he was intoxicated, and he smelled of marijuana.

When Defendant did not comply with a search, Sergeant Hull placed him under arrest.  Upon searching Defendant's person, Sergeant Hull found what he believed to be two bags of marijuana, a bag containing nine MDMA pills, a bag of crack cocaine, a bag of powder cocaine, and two bags of suspected methamphetamine.  Although he did not conduct any field tests on the substances, Sergeant Hull's conclusions were based on his 19 years of experience, multiple drug arrests, narcotics sight identification classes, and over 2,000 hours of training.  He also stated that the packaging of the substances was consistent with the sale of

3

illegal narcotics.  Sergeant Hull logged the narcotics in with the Sheriff's Office, where the suspected marijuana was tested; the other narcotics were forwarded to the Georgia Bureau of Investigation ("GBI") for chemical analysis.

At the revocation hearing, the Government then sought to admit the GBI laboratory reports through the testimony of Sergeant Hull.  Defendant objected to the admissibility of the contents of the reports because the chemists who performed the tests were not present to testify.  Although Defendant acknowledged that the Federal Rules of Evidence did not apply to revocation hearings, he asserted that the district court must conduct a balancing test before determining whether to admit hearsay evidence.  The district court reserved ruling on the objection until the conclusion of Sergeant Hull's testimony.  Sergeant Hull testified that the laboratory reports confirmed that the substances Defendant possessed were cocaine, methamphetamine, and marijuana.

On cross-examination, Defendant questioned Sergeant Hull about some discrepancies between his initial identifications of the substances and what the GBI had ultimately determined the substances to be.  Sergeant Hull admitted that he had initially suspected that two bags containing a pink substance were methamphetamine, but the laboratory report listed the substance as ethylone, not methamphetamine.  Of the two bags that he had initially suspected were cocaine and cocaine base, the GBI confirmed that one of the bags was cocaine.  Sergeant

4

Hull had also initially identified pink and yellow tablets as MDMA pills, but the GBI concluded that those were instead methamphetamine.

The district court admitted the laboratory reports over Defendant's objection that there was no live testimony from the preparers of the report and no corroboration for the information contained in those reports. The Government responded that there was no reason to question the reliability of the reports and the district court acknowledged that there was nothing unusual about the process by which the reports were generated. The Government further explained the impracticability of routinely requiring chemists to testify about their reports, given the busy schedules of the latter and the more relaxed standard of proof for revocation proceedings. The district court acknowledged the difficulty of scheduling chemists to testify as a routine matter, given their workload, but acknowledged that live testimony from a chemist should be required in a revocation proceeding when the circumstances warranted it. The court concluded that the circumstances in this proceeding did not mandate calling the chemists to testify.

Defendant testified on his own behalf. According to him, the drugs were found in the backseat of the car, not on his person. He also denied that the drugs belonged to him. However, he admitted that he had used marijuana approximately

5

25 days before submitting to the urinalysis test on May 4, 2015, which time period was close to the date when he was arrested.

After Defendant's testimony, the district court concluded that the Government had established by a preponderance of the evidence that Defendant was in possession of cocaine and methamphetamine. In short, the district court concluded that the Government had met its burden of establishing the first violation. Because the first violation was a Grade B violation and Defendant's criminal history category was VI, the district court calculated a guideline range of 21 to 27 months' imprisonment. Consequently, the district court revoked Defendant's supervised release and sentenced him to 24 months' imprisonment.

## II. DISCUSSION

The applicability of the Federal Rules of Evidence to a supervised release revocation hearing is a question of law that we review *de novo*. *United States v. Frazier*, 26 F.3d 110, 112 (11th Cir. 1994). We review evidentiary decisions, in addition to the revocation of supervised release, for an abuse of discretion. *United States v. Ridgeway*, 319 F.3d 1313, 1315 (11th Cir. 2003) (revocation of supervised release); *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001) (evidentiary decisions).

Under 18 U.S.C. § 3583(e), a district court may revoke a defendant's supervised release and impose a sentence of imprisonment if the district court

6

determines by a preponderance of the evidence that the defendant has violated a condition of supervised release.  18 U.S.C. § 3583(e)(3).

Although the Federal Rules of Evidence do not apply to supervised release revocation proceedings, the admission of hearsay evidence is not "automatic" and a defendant is entitled to certain minimal due process rights, including the right to confront and cross-examine witnesses.  *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994).  To determine whether or not to admit hearsay, a district court "must balance the defendant's right to confront adverse witnesses against the grounds asserted by the Government for denying confrontation."  *Id.*  The hearsay evidence must also be reliable.  *Id.*  The district court's failure to conduct the balancing test constitutes error.  *Id.*  However, we have concluded that a due process violation is harmless if there is other sufficient, properly considered evidence, which establishes that the defendant violated the terms of his supervised release.  *Id.*

Here, the district court did not abuse its discretion or violate Defendant's due process rights by admitting the laboratory reports without the testimony of the chemists who prepared them.  The record shows that the district court and the parties thoroughly discussed the requirements of the balancing test as established by *Frazier*, and that the court carefully considered the issue.

As to any lack of reliability in the GBI's determination that the seized substances were, in fact, cocaine and methamphetamine, Defendant pointed to nothing that would suggest that the GBI's determination was unreliable.  It is true that the arresting officer, based on many years of experience and training, believed that, in addition to marijuana, the substances he discovered consisted of cocaine, methamphetamine and MDMA pills, whereas the lab report agreed that the substances included the first two items, but not the third.  But that discrepancy between how the officer assessed the identity of the drugs and what the lab report revealed the substances to be does not undermine the reliability of the lab report.  If anything, that the lab report identified one of the substances as ethylone, which is not a controlled substance, suggests that the chemist was exacting in his examination.  In fact, the district court noted that there was no assertion or indication that the evidence was improperly handled or that the lab reports were compiled in anything but the usual and typical manner.  *Cf. United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991) ("Admission of hearsay evidence in probation hearings does not violate due process, as long as it bears some indicia of reliability.").

As to the Government's practice of not routinely requiring chemists to appear at revocation hearings, absent some particular reason to do so, the district court indicated that the busy schedules of the two chemists involved would not, by

8

itself, justify a failure to call them if there were some genuine question as to the reliability of their reports.  But in this case there was no such question.  And the logical extension of Defendant's position is that chemists should be required to offer live testimony in every case, which would mean ignoring the principle permitting admission of reliable hearsay evidence in a revocation proceeding.

In short, on the facts of this case, we conclude that the district court did not abuse its discretion nor violate Defendant's due process rights by admitting the laboratory reports.[1]  To the extent Defendant also argues that his Sixth Amendment rights were violated because he was not being permitted to cross-examine the chemists, this argument is unavailing.  In *United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015), we held that the Sixth Amendment does not apply to supervised release revocation proceedings.  *Id.*  As a result, we determined that the district court did not err by admitting laboratory reports through the testimony of a police officer rather than through the testimony of the chemist who performed the test.  Indeed, we noted that eight other circuit courts had similarly ruled.  *Id.* Defendant likewise cannot show that the admission of the laboratory reports violated his Sixth Amendment rights.

---

[1]  Because we conclude that the district court did not abuse its discretion or violate Defendant's due process rights by admitting the laboratory reports, we do not address the Government's argument that any purported error in the district court's admission of the reports was harmless.

9

In summary, the Government met its burden of establishing by a preponderance of the evidence that Defendant violated the terms of his supervised release.  We therefore **AFFIRM** the district court's revocation of Defendant's supervised release.